```
      IN THE UNITED STATES DISTRICT COURT
     FOR THE SOUTHERN DISTRICT OF ALABAMA
               SOUTHERN DIVISION
```

| | |
|---|---|
| **MICHAEL HENRY SMITH,** | : |
| Petitioner, | : |
| vs. | : CIVIL ACTION 06-00159-WS-B |
| **MS. ADAMS,** | : |
| Respondent. | : |

## REPORT AND RECOMMENDATION

Michael Henry Smith filed the instant habeas corpus action pursuant to 28 U.S.C. § 2241 while a federal prisoner confined at the Baldwin County Corrections Center in Bay Minette, Alabama. (Docs. 1, 8). The petition has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). The undersigned has conducted a careful review of the record and finds that no evidentiary hearing is required to resolve this case. Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317 (11th Cir. 2004). Following a complete review of this action, the undersigned recommends that the petition be dismissed as moot.

**I.   Background Facts**

Petitioner was convicted in the United States District Court, Southern District of Alabama, in 1991 for a drug related charge, and was sentenced to 212 months and five years of supervised release. (Docs. 1, 8). According to Petitioner, he was released from a federal detention center in Yazoo City, and was placed in

the Community Corrections Center, a halfway house, in Spanish Fort Alabama on February 15, 2006.  Petitioner alleges that he provided a urine sample on February 27, 2006, and that he was informed that the sample tested positive for drugs.  As a result, on March 9, 2006, Smith was taken into custody by the U.S. Marshal's office and was transported to Baldwin County Corrections Center.  As best the Court can discern, Smith was released from custody in May 2006, and commenced a term of supervised release which was set to expire on May 15, 2011. (See Docs. 10, 12).

Smith initiated the instant habeas action on March 3, 2006. (Doc. 1).  In his petition, Smith asserts that he was improperly removed from the half-way house and was deprived of an independent drug analysis of the urine sample and a disciplinary hearing. Smith further asserts that he was deprived of the opportunity to prepare for his release back into society and of the opportunity to work to assist his family.  In his prayer for relief, Smith requests an independent analysis of his urine sample and his release from custody at the Baldwin County Corrections Center. (Docs. 1, 8).

In an Order dated June 22, 2009 (Doc. 17), Respondent was directed to file an Answer to Smith's petition. In response, Respondent filed a Motion to Dismiss. (Doc. 19).  In the Motion, Respondent asserts that this action is moot because Smith has been released from federal custody.  Respondent asserts, and a review of

the Court's docket confirms that on June 16, 2009, U.S. District Judge Butler granted Smith's request for early termination of his Supervised Release Term. (See CR No. 91-00039-CB, Doc. 6). In his response in opposition to Respondent's Motion to Dismiss, Smith denies that his case is moot[1]. According to Smith, his case is not moot because he will suffer collateral consequences as a result of the incorrect results of the drug test. Smith asserts that because of the false test, he will not be able to secure a Transportation Worker Identity Card (TWIC) and this will, in turn, make it impossible for him to work as a Journeyman Electrician in any facility which requires clearance.

**II. CONCLUSIONS OF LAW**

Article III of the Constitution limits the jurisdiction of federal courts to the consideration of "Cases" or "Controversies." U.S. Const. Art. III, § II 2. "The doctrine of mootness derives directly from the case or controversy limitation because 'an action that is moot cannot be characterized as an active case or controversy.'" Soliman v. United States ex rel. INS, 296 F. 3d 1237, 1242 (11th Cir. 2002)(citation omitted). "[A] case is moot

---

[1] Smith also attacks Respondent's motion on the ground that it violated this Court's Order prohibiting parties from filing dispositive motions without leave of Court. (Doc. 17). While Smith is correct that Respondent did not seek leave of Court prior to filing the motion, the undersigned finds that because the Court's jurisdiction is limited to "live" controversies, and the Court is required to dismiss those actions which become moot, the mootness issue raised in Respondent's motion must be resolved.

3

when the issues presented are no longer 'live' or the parties lack a legally recognizable interest in the outcome." Id. (internal quotation marks and citation omitted). Thus, if an event occurring after the filing of the lawsuit deprives "the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." Id. (internal quotation marks and citations omitted). See also Spencer v. Kemna, 523 U.S. 1, 7, 118 S. Ct. 978, 983, 140 L. Ed. 2d 43 (1998)("Throughout the litigation, the plaintiff 'must have suffered or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'")(citation omitted).

Upon expiration of an inmate's sentence, some concrete and continuing injury or "collateral consequence" of the conviction must exist if the habeas action is to be maintained. Spencer, 523 U.S. at 7. In Pollard v. United States, 352 U.S. 354, 77 S. Ct. 481, 1 L.Ed. 2d 393 (1957), the Supreme Court held that a habeas petitioner challenging the validity of his conviction had an active case in controversy even though he had been released, because his conviction might affect his resident alien status. Later, in Carafas v. Lavalle, 391 U.S. 234, 237, 88 S. Ct. 1556, 20 L. Ed. 2d 554(1968), the Supreme Court held that a petitioner who challenges the validity of his underlying criminal conviction can often satisfy the case-or-controversy requirement of Article III by showing, inter alia, that the conviction affects his ability to

vote, engage in certain businesses, serve as a juror, or hold public office. See also Evitts v. Lucey, 469 U.S. 387, 105 S. Ct. 830, 83 L. Ed. 2d 821 (l985)(the list of collateral consequences include the denial of the right to vote and hold public office and the possibility of being impeached as a witness at a future time). The Supreme Court went a step further in Sibron v. New York, 392 U.S. 40, 55, 88 S. Ct. 1889, 20 L.Ed. 2d 917 (1968), and held that collateral consequences are presumed when a petitioner is challenging his underlying criminal conviction. Sibron places the burden on the government to prove the absence of adverse collateral consequences when a petitioner challenges the underlying criminal conviction. See, e.g., Gentry v. Deuth, 456 F.3d 687, 694 (6th Cir. 2006)("With respect to injury, an essential element of a live controversy, the law does not require a habeas petitioner to prove by a preponderance of the evidence that she may face collateral consequences of her unconstitutional felony conviction, for the disabilities consequent to a felony conviction are legion, and patently obvious in many cases.").

While there is a presumption of adverse collateral consequences when the underlying criminal conviction is being attacked, the Supreme Court, in Lane v. Williams, 455 U.S. 624, 102 S. Ct. 1322, 71 L. Ed. 2d 508(1982) refused to extend the presumption of collateral consequences to a prisoner's challenge to the parole portion of his sentence and not his conviction. Thus,

the habeas petitioner was required to prove the existence of collateral consequences in order to overcome the mootness issue that arose upon the expiration of his sentence. See also Graham v. United States Parole Comm'n, 732 F.2d 849, 850 (11th Cir. 1984)(dismissing habeas petition as moot where petitioner sought release on parole and was released during pendency of habeas action); see also Askenazi v. AG of the United States, 358 U.S. App. D.C. 121, 346 F.3d 191, 192 (D.C. Cir. 2003) (whether BOP policy permitting assignment of inmates to halfway houses for only last ten percent of sentences violated ex post facto prohibitions was moot because petitioner came within last ten percent of term of incarceration during pendency of habeas petition, and BOP policy could have no future effect on petitioner).

In the case sub judice, the evidence is undisputed that Smith was released from federal custody shortly after filing his § 2241 petition and that his supervised release was terminated early in June 2009. (Docs. 10, 19, 21).  Thus, it is clear that Smith has received that which he was essentially seeking by the filing of his petition, namely release from custody[2].  While Smith asserts that he will suffer collateral consequences as a result of the alleged false drug test, the undersigned finds that Smith's claims are

---

[2]While Smith also requested an independent drug test, and hearing, the purpose of both requests was to enable him to prove that the initial test was false, and that he therefore should not have been removed from the halfway house.

6

speculative at best.  First of all, Smith is not challenging his underlying felony drug conviction; thus, there is no presumption of collateral consequences.  Moreover, while Smith argues that his ability to work in his chosen filed will be negatively impacted by the alleged false drug test, there is no evidence that such disciplinary information is readily available to the public.  More importantly, Smith has proffered no facts which suggest that it is his failed drug test, as opposed to his felony drug conviction, that will negatively impact his ability to work in his chosen field.  Accordingly, upon consideration of the record evidence, the undersigned finds that Smith's allegations of collateral consequences flowing from the alleged false drug test are speculative at best, and as such, are not sufficient to create a "live" or "active" controversy.  Thus, his claims are moot.

### III. CONCLUSION

For the reasons set forth above, it is the opinion of the undersigned Magistrate Judge that Smith's petition for habeas corpus relief should be dismissed as MOOT.  It is so recommended.

The attached sheet contains important information regarding objections to this recommendation.

**DONE** this **9th** day of **September, 2009**.

                                        **/s/ SONJA F. BIVINS**
                                    **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

     A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                        /s/ SONJA F. BIVINS
                                      **UNITED STATES MAGISTRATE JUDGE**